IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TENNENBAUM CAPITAL PARTNERS, LLC | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | No.: 09-MC-194 |
| | : | |
| MICHAEL T. KENNEDY, | : | |
| Defendant. | : | |

## MEMORANDUM

**SITARSKI, M.J.**                                                                                          September 7, 2018

Before the Court is the Plaintiff Tennenbaum Capital Partners, LLC's ("Plaintiff") Motion to Compel Defendant Michael Kennedy ("Defendant") to produce documents, Defendant's Opposition, and Plaintiff's Reply thereto. (ECF Nos. 282, 283, 288). This matter has been assigned to Judge C. Darnell Jones II who referred it to me for disposition pursuant to 28 U.S.C. § 636(b)(1)(A). (ECF No. 286). After careful consideration of the parties' briefs, Plaintiff's Motion to Compel is **GRANTED.**

### I.     BACKGROUND

As the Honorable C. Darnell Jones II previously observed back in 2012, "[t]his matter is years past its expiration date." (ECF No. 243). The parties are surely familiar with the facts of the case. Accordingly, the Court will summarize only the facts necessary to address the pending Motion to Compel as identified in the parties' briefs, attached exhibits, and the docket.

On September 11, 2009, Judge Laura Taylor Swain of the United States District Court for the Southern District of New York granted Plaintiff's motion for summary judgment in a breach of contract action against Defendant for failure to pay the amount owed to Plaintiff under a Guaranty Agreement. *Tennenbaum Capital Partners LLC v. Kennedy*, 2009 WL 2913679

(S.D.N.Y. 2009). Judge Swain entered judgment for Plaintiff in the amount of $14,394,180.88. *Id.*

On November 5, 2009, this judgment was filed with this Court. *Tennenbaum Capital Partners, LLC v. Kennedy*, No. 09-194 (ECF No. 1). Over the past eight years, Plaintiff has tried to recover the judgment amount through garnishment of Defendant's partnership and shareholder interests in various entities. (*See, e.g.*, ECF Nos. 4-23, 30-35). It suffices to say that despite its efforts, Plaintiff has been largely unable to satisfy the $14,394,180.88 judgment it obtained against Defendant. On April 19, 2017, Plaintiff filed a Request for Entry of Default against Defendant stemming from Defendant's failure to respond to the Writ of Revival dated September 16, 2015. (ECF No. 275). Plaintiff sought "[e]ntry of default against [Defendant] in the amount of $14,394,180.88 with interest from September 11, 2009, less credited payments of $37,392.00." (ECF No. 277).

On May 19, 2017, Plaintiff served a Notice of Deposition on Defendant, attaching a Request for Production of Documents, requesting Plaintiff to produce various documents relating to Plaintiff's income, assets, finances, and involvement in various business entities. Plaintiff was required to bring the requested documents to his deposition on July 10, 2017. (Pl.'s Mot. Compel, Ex. A, Notice Dep., 5/19/17, at ¶¶ 1-23). At the deposition, Plaintiff's counsel asked Defendant if he had any documents in his possession that were requested in the deposition notice, but which Plaintiff did not bring to the deposition. (Pl.'s Mot. Compel, Ex. B, Def.'s Dep., 7/10/17, 8:8-13). Defendant responded that "[i]f I deemed them irrelevant or out of scope, I didn't bring them." (*Id.* at 8:14-16). Also at this deposition, Defendant denied having any interest in the various business entities he was questioned about.

On August 9, 2017, Plaintiff's attorney wrote Defendant's attorney a letter requesting that Defendant produce the documents he had failed to provide in response to the Notice of Deposition. (Pl.'s Mot. Compel, Ex. K, Attorney Letter, 8/9/17). Additionally, Plaintiff's attorney noted that, in 2012, Defendant had testified that Veracen LP was a mere "shell"; but, an August 23, 2016, news report stated that "Turner Investments, LLC ('Turner') announced today that its previously-announced merger with Veracen, LP ('Veracen') had been completed. The merger-of-equals united Turner's existing 26-year legacy of active investing with Veracen's proprietary operating platform and disciplined investment process."[1] (*Id.*).

Also in this letter, Plaintiff's counsel noted, "[d]uring that same period, the ownership changes from [Defendant] to his family members and his Trust, and [Defendant] ended up as an employee of a Turner company." (*Id.*). At his July 10, 2017, deposition, Defendant was asked about a pass-through loss that his wife recognized on their joint tax return wife pertaining to Veracen; to which he explained "I suppose this was before it was formally in the trust" and "[t]hat is when Veracen must have been started . . . before it went into trust." (Pl.'s Reply to Def.'s Br., Ex. B., Def.'s Dep., 7/10/17, at 35:5-7; 37:4-5, 7-8).

On August 14, 2017, Defendant's attorney responded to Plaintiff's August 9, 2017 letter. (Pl.'s Mot. Compel, Ex. E, Attorney Letter, 8/14/17). In that letter, Defendant's attorney stated he was responding to "[y]our request for additional documents relating to the merger between Veracen and Turner." (*Id.*). Defendant's attorney stated "as you should now be well aware, Mr. Kennedy has never had a direct or indirect ownership interest in either entity, [Turner Investments LLC or Veracen, LP.]" (*Id.*).

---

[1] Plaintiff has provided a news report which noted that in Turner's twenty-five year history, "Turner Investments reached more than $30 billion in assets under management." (Pl.'s Br, Ex. H, p. 5). Thus, a "merger-of-equals" on August 23, 2016, would imply that Veracen, LP similarly had close to $30 billion in assets under management as of that date.

3

On October 17, 2017, Plaintiff visited a website for the "Private Fund Manager Profile" of Turner Investments LLC. (Pl.'s Mot. Compel, Ex. G, *Turner Investments LLC*, PREDICTIVEOPS, https://predictiveops.com/advisers/285423). Defendant is listed under "Direct Owners" as a "Control Person, CEO/Managing Principal (since 08/2016)" and with "Ownership Percentage: Less than 5%." (*Id.* at 6). Defendant is also listed as an "Indirect Owner," described as "Owned through: Veracen, L.P." since June, 2013, with "Ownership Percentage: More than 50% but less than 75%." (*Id.* at 7).

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 69 provides that "[i]n aid of the judgment or execution, the judgment creditor . . . may obtain discovery from any person—including the judgment debtor—as provided in these rules or by the procedure for the state where the court is located." Fed. R. Civ. P. 69(a)(2). "The rules governing discovery in postjudgment execution proceedings are quite permissive." *Republic of Argentina v. NML Capital, Ltd.*, 134 S. Ct. 2250, 2254 (2014). Indeed, this rule allows the "judgment creditor . . . freedom to make a broad inquiry to discover hidden or concealed assets of the judgment creditor." *ITOCHU Int'l, Inc. v. Devon Robotics, LLC*, 303 F.R.D. 229, 232 (E.D. Pa. 2014) (quoting *Caisson Corp. v. Cnty. W. Bldg. Corp.*, 62 F.R.D. 331, 334 (E.D. Pa. 1974)).

A district court has discretion when granting or denying discovery in aid of execution. *See Ohntrup v. Makina Ve Kimya Endustrisi Kurumu*, 760 F.3d 290, 296 (3d Cir. 2014). Under the federal rules,[2] "[p]arties may obtain discovery regarding any nonprivileged matter that is

---

[2] Plaintiff does not seek to compel production of the documents through Pennsylvania procedures, which may be permissible under Federal Rule 69. Accordingly, the Court will analyze Plaintiff's motion in accordance with the Federal Rules of Civil Procedure.

4

relevant to any party's clam or defenses and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Relevance in the context of discovery is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Generally, this scope is very broad, but can be limited "for good cause to protect a person from embarrassment, oppression, or harassment;" *Caisson Corp.*, 62 F.R.D. at 333, and in federal court it must be "proportional" to the needs of a case. Fed. R. Civ. P. 26(b)(1). A court should deny a postjudgment discovery request where it "could not possibly lead to executable assets [and therefore] is simply not 'relevant' to execution in the first place." *Ohntrup*, 760 F.3d at 296-97 (quoting *Republic of Argentina*, 134 S.Ct at 2257).

## III. DISCUSSION

Plaintiff filed this Motion to Compel Defendant to meaningfully respond to and produce documents listed in Plaintiff's May 19, 2017, notice of deposition and attached request for documents. (Pl.'s Br. Supp. Mot. Compel at 3 [hereinafter Pl.'s Br.]; *see also* Ex. A). Plaintiff asserts that Defendant has not been completely forthright in his responses to post-judgment discovery. Citing to Defendant's deposition testimony, various media reports, and communications with Defendant's attorney, Plaintiff contends that Defendant has been reticent in providing responses about his assets, transactions, and involvements in various entities. (Pl.'s Br. at 3-5). Defendant responds that the present Motion to Compel is unwarranted because it is based on the "[Plaintiff's] own *ipse dixit* to the contrary of what the discovery to date actually shows." (Def.'s Resp. Oppos. to Pl.'s Mot. Compel, ECF No. 283, at 10 [hereinafter Def.'s Br.]).

The Court has reviewed the parties' motions, memoranda, and the attachments. Plaintiff's Motion to Compel will be **GRANTED.**

In its May 19, 2017, Notice of Deposition, Plaintiff requested Defendant to bring the following to the deposition:

> 1. Any and all documents which relate to your personal expenses from 2014 to the present including, but not limited, to copies of checkbooks, check registers, cancelled checks, bank statements, Quickbooks or similar legers, credit card statements, and repayments on personal loans and/or lines [of] credit.
>
> 2. Any and all documents which refer or relate to any payments made to you from any source during the calendar years 2014-2017.
>
> 3. Any and all documents which refer or relate to payments or distributions made to you from 2014 to the present by any partnership or corporation in which you held a management position, and/or controlling and/or majority interest.
>
> 4. Your Federal, State and Local Income Tax Returns for the calendar years 2013-2016.
>
> 5. Any and all K-1's, W-2, or other statements of income or distribution which you received at any time during the calendar years 2013 to present.
>
> 6. Any and all documents which refer or relate to any income you received from 2014 to the present.
>
> 7. Any and all documents which refer or relate to any assets you sold, gifted or distributed from 2014 to present.
>
> 8. Any and all documents which refer or relate to any assets you acquired from 2014 to present.
>
> 9. Any and all documents which refer or relate to Turner Concentrated Global Growth, LP.
>
> 10. Any and all documents which refer or relate to Turner Genesis, LP.

11. Any and all documents which refer or relate to Turner International Growth, LP.

12. Any and all documents which refer or relate to Turner Investment Holdings, LP.

13. Any and all documents which refer or relate to Turner Investments, Inc.

14. Any and all documents which refer or relate to Turner Investments, LLC.

15. Any and all documents which refer or relate to Turner Investments, LP.

16. Any and all documents which refer or relate to Turner Market Leaders, LP.

17. Any and all documents which refer or relate to Veracen Funds.

18. Any and all documents which refer or relate to Veracen, LP.

19. Any and all documents which refer or relate to Willistown Partners, LLC.

20. Any and all documents which refer or relate to Benchmark Holdings, Inc. d/b/a BHI, Inc.

21. Any and all documents which refer or relate to Trinity Capital Partners GP, Inc.

22. Any and all documents which refer or relate to Crothall Services Group.

23. Any and all documents which refer or relate to Tennessee Airgas, Inc.

(Pl.'s Mot. Compel, Ex. A, Notice Dep., 5/19/2017, at ¶¶ 1-23).

Preliminarily, we note that Defendant did not properly object to these documents requested in the Notice of Deposition. Objections to the notice of deposition are waived unless a written objection is promptly served upon the party giving notice. Fed. R. Civ. P. 32(d)(1),

34(b); *see also U.S. v. O'Neill*, 619 F.2d 222, 225 (3d Cir. 1980) (stating that "a party objecting to a request for production of documents . . . must submit a written response specifying the objection to each category."). The objection can take the form of a motion of protective order. *See* Fed. R. Civ. P. 26(c). At Defendant's July 10, 2017, deposition, Plaintiff's attorney asked Defendant about the documents requested in its Notice of Deposition, and asked if there were any documents requested, but which Defendant did not bring. (Ex. B, Def.'s Dep. 7/10/17, 8:1-16). Defendant testified that "[i]f I deemed them irrelevant or out of scope, I didn't bring them." (*Id.* at 8:14-15). However, per the Federal Rules "[a]n objection to . . . a deposition notice is waived unless promptly served in writing on the party giving notice." Fed. R. Civ. P. 32(d)(1). Accordingly, such a unilateral determination by one party that documents in a Notice of Deposition are "irrelevant or out of scope," is not the proper form of objection. *See* Fed. R. Civ. P. 26(c).

In regards to the instant Motion to Compel, under Federal Rule of Civil Procedure 37, a party may file a motion to compel production of documents if the opposing party has failed to produce them. Fed. R. Civ. P. 37(3)(B)(iv). "The moving party bears the initial burden of showing that the requested discovery is relevant." *Plexicoat Amer., LLC, v. PPG Architectural Finishes, Inc.*, No. 13-3887, 2015 WL 171831, at *3 (E.D. Pa. Jan. 14, 2015) (citing *Morrison v. Phila. Hous. Auth.*, 203 F.R.D. 195, 196 (E.D. Pa. 2001)). The burden then shifts to the opposing party to demonstrate to the court "that the requested documents either do not come within the broad scope of relevance defined pursuant to Fed. R. Civ. P. 26(b)(1) or else are of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Plexicoat Amer. LLC*, 2015 WL 171831 at

*2 (quoting *Young v. Lukens Steel Co.*, No. 92-6490, 1004 WL 45156, at *2 (E.D. Pa. Feb. 10, 1994)).

The Court concludes that Plaintiff has satisfied its burden of showing that the documents requested in its May 19, 2017, Notice of Deposition, are relevant and would lead to the discovery of "concealed and hidden assets." *ITOCHU Int'l, Inc.*, at 232; *Caisson*, 62 F.R.D. at 334. In *ITOCHU Int'l, Inc., v. Devon Robotics, LLC*, the court discussed a similar situation to the case at bar; specifically, a judgment creditor seeking to discover concealed and transferred assets of the judgment debtor. 303 F.R.D. 229. The Court denied the defendant's motion to quash the plaintiff's subpoena of the defendant's and the defendant's wife's bank records. *Id.* at 234. The Court reasoned that, despite the defendant's claims he did not have the funds to satisfy the judgment, given the evidence of "an intricate system of asset transfers . . . [d]iscovery of [defendant's] bank accounts and financial records is plainly relevant to these efforts, and is a proper form of post-judgment discovery." *Id.* at 234.

We conclude that the documents that Plaintiff requests are plainly relevant to discovering any "hidden or concealed assets of [Defendant.]" *ITOCHU Int'l, Inc.*, 303 F.R.D. at 232; *Caisson*, 62 F.R.D. at 334. For example, Plaintiff requested "[a]ny and all documents which refer or relate to any assets you sold, gifted or distributed from 2014 to present." (Pl.'s Mot. to Compel, Ex. A ¶ 7). Discovery into such matters is plainly relevant when a party is attempting to execute a judgment when the opposing party claims insolvence and/or inability to satisfy the judgment. *See ITOCHU Int'l, Inc.*, 303 F.R.D. at 233 (discussing money or property of judgment debtor that has been transferred to evade judgment creditors); *Dering v. Pitassi*, 1988 WL 115806, at *2 (E.D. Pa. Oct. 26, 1988) (stating that "Rule 69 provides plaintiff with the procedure for ascertaining which assets were transferred.").

9

By way of example, at the July 10, 2017, deposition, Defendant testified that "any interest in Veracen, LP is in trust." (Pl.'s Reply Br., Ex. B, Def.'s Dep. 7/10/17, at 38:1-2). Defendant's counsel reiterated as much in an August 14, 2017, letter to Plaintiff's counsel: "[Defendant has] no ownership interest, either directly or indirectly, in [Veracen, LP] that was merged last year into Turner. He also has no ownership interest in any Turner entity." (Pl.'s Mot. Compel, Ex. E, Attorney Letter, 8/14/17). On the other hand, Plaintiff has cited to publicly available information on "Turner Investments LLC" showing that, as of October 17, 2017, Defendant was listed as a "Direct Owner" described as a "Control Person, CEO/Managing Principal (since 08/2016)" and with "Ownership Percentage: Less than 5%." (Pl.'s Mot. Compel, Ex. G, *Turner Investments LLC*, PREDICTIVEOPS, https://predictiveops.com/advisers/285423). The publicly available information also identifies Defendant as an "Indirect Owner," described as "Owned through: Veracen, L.P." with "Ownership Percentage: More than 50% but less than 75%." (*Id.*). This public information is at odds with Defendant's lawyer's assertion three months prior that Defendant does not "any ownership interest, directly or indirectly," in Veracen, LP or "any Turner entity." (Pl.'s Mot. Compel, Ex. E, Attorney Letter, 8/14/17).

Moreover, the documents requested are relevant because Defendant's deposition testimony indicates that he controls money, and he controls the placement of assets in the various trusts. At his May 22, 2012, deposition, while discussing "a repayment of a loan to [his wife]" and how is "children are putting capital, into the GP[,] or loaning us money" Defendant testified that "I could have put that money directly from my kids' trust directly to [my wife], but I didn't." (Def.'s Dep., 5/22/12, 63:16-18). Additionally, at his July 10, 2017, deposition, when discussing a pass-through loss his wife recognized on their joint tax return, Defendant explained that "I

10

suppose this was before [Veracen, LP] was formally in the trust" and "[t]hat is when Veracen must have been started . . . before it went into trust." (Pl's Mot. Compel, Ex. B, Def.'s Dep. 7/10/17, 35:5-7; 37:4-5, 7-8). Although Defendant asserts that he "adopted an estate management plan in the mid-1990s that placed everything he owned in trust for his children," (Def.'s Br. at 9), this testimony would tend to indicate that more recent asset transfers have been made, and which may have had the effect of frustrating the execution of the judgment entered in Defendant's favor on September 11, 2009, "in the amount of $14,394,180.88 with interest . . . , less credited payments of $37,392.00." (ECF No. 277); s*ee also Dering*, 1988 WL 115806, at *2 ("Any non-de minimus transfers of assets after the [judgment date] could be construed as an attempt by defendant to avoid his financial obligation to plaintiff by liquidating any personal holdings that might be levied upon in the event of default.").

Accordingly, the Court concludes that Plaintiff has satisfied its showing that the "requested discovery is relevant" as these documents could "possibly lead to executable assets." *Ohntrup*, 760 F.3d at 296-97.

The burden thus shifts to Defendant to demonstrate to the court "that the requested documents either do not come within the broad scope of relevance defined pursuant to Fed. R. Civ. P. 26(b)(1) or else are of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Plexicoat Amer. LLC*, 2015 WL 171831 at *2 (quoting *Young v. Lukens Steel Co.*, No. 92-6490, 1004 WL 45156, at *2 (E.D. Pa. Feb. 10, 1994)).

Defendant has failed to demonstrate that the requested documents are irrelevant. Indeed, Defendant does not make a substantive legal argument in opposition to Plaintiff's Motion to Compel. In fact, Defendant has acknowledged that that he did not comply with the Request for

Production that accompanied the May 19, 2017, Notice of Deposition. For example, Defendant states that in regards to "three [entities,] he explained that because he did not have an ownership interest in them, the only documents he had were documents that he would see in the ordinary course of doing his job as managing principal of those three entities." (Def.'s Br. at 6). He continues to argue that "[b]ecause they did not deal with any alleged ownership by him, he did not think [the documents he had] were within the scope of what was being asked for, and thus, in that context not relevant." (Def.'s Br. at 6-7).

As noted above, this is not the proper form of an objection to documents requested in a Notice of Deposition. *See* Fed. R. Civ. P. 32(d)(1). Moreover, Plaintiff requested "any and all documents which refer or relate to" fifteen entities. There was no "ambiguity, obscure language, or room for misunderstanding" in the Notice and Request for Production: Bring the documents you have in your possession which refer or relate to these business entities. *See Massachusetts Sch. Law at Andover, Inc. v. Amer. Bar Ass'n*, 914 F. Supp. 1172, 1175 (E.D. Pa. 1996) (discussing motion to compel production of documents and finding that there should be no confusion when requested to "produce and permit inspection and copying of . . . All documents relating to" a particular entity.).

Therefore, Plaintiff's Motion to Compel is granted. Plaintiff has shown that the requested documents are relevant to their continuing efforts to locate executable assets to satisfy the fourteen million dollar-plus judgment that Plaintiff obtained nine years ago. Defendant has failed to demonstrate that the requested documents are irrelevant.

## IV. CONCLUSION

Accordingly, the Court concludes that Plaintiff's Motion to Compel is **GRANTED.**

An appropriate Order follows.

BY THE COURT:

  /s/ Lynne A. Sitarski
LYNNE A. SITARSKI
United States Magistrate Judge